UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00654-TBR


C. WILLIAM HELM                                                    Plaintiff

v.

TRACY EELLS                                                       Defendants
EDWARD HALPERIN


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' motion to dismiss.  (Docket #5).
Plaintiff has responded (Docket #10).  Defendants have replied.  (Docket #15).  This
matter is now ripe for adjudication.  For the foregoing reasons, Defendants' motion to
dismiss (Docket #5) will be GRANTED in part and DENIED in part.


BACKGROUND

This action arises out of Plaintiff Dr. C. William Helm's termination from the
University of Louisville School of Medicine.  Helm was a clinician, teacher, and
researcher in the Division of Gynecologic Oncology from 2000 to 2010.  At all relevant
times, Defendant Dr. Edward Halperin was the Dean and Defendant Dr. Tracy Eells was
the Associate Dean for Faculty Affairs.

Helm's termination followed allegations that Helm took ideas for his research on
ovarian cancer from research performed by two other doctors, Dr. Douglas Taylor and Dr.
Cicek Gercel-Taylor.  These allegations were made by Dr. Lynn Parker, the Director of
the Division of Gynecologic Oncology, in a memorandum to Eells.  The allegations came

as Helm was in the process of being reviewed for promotion from Associate Professor, an untenured position, to Professor, a tenured position.

The University of Louisville School of Medicine has enacted a Research Misconduct Policy.  It requires research misconduct, which includes "taking another person's ideas without giving appropriate credit," to be reported to the Research Integrity Ombudsperson.  (Docket #10).  Helm argues Eells and Halperin did not report the alleged plagiarism to the Ombudsperson or keep the allegations confidential, as required by the Research Misconduct Policy.  (Docket #1-15).  Instead, Eells and Halperin discussed the plagiarism allegations with administration officials, other doctors, and legal counsel for the University of Louisville.

Helm claims he has been deprived of his liberty and property interest without due process.  Helm also claims the Defendants "violated the express terms of 42 U.S.C. § 241, 42 U.S.C. § 289b, 42 U.S.C. § 1983, 42 C.F.R. 93 et seq," and "KRS 522.010 *et seq.*"  (Docket #1).

## STANDARD

Although Defendants filed a motion to dismiss, both parties have presented substantial evidence and matters outside the pleadings.  Accordingly, the Court will treat Defendants' motion as a motion for summary judgment.   Fed. R. Civ. P. 12(d);  *Song v. Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence.  To support this position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

As an initial matter, the Court will address Helm's statutory claims before turning to his § 1983 claim.  In his complaint, Helm alleged the Defendants "violated the express terms of 42 U.S.C. § 241, 42 U.S.C. § 289b, 42 U.S.C. § 1983, 42 C.F.R. 93 et seq," and "KRS 522.010 *et seq.*"  (Docket #1).  The Defendants argue that, with the exception of Helm's § 1983 claim, none of these statutes create a private cause of action.  (Docket #5, 15).  Helm responds he is "not claiming such private right of action" for any statutes

3

except his § 1983 claim and the other statutes merely provide "context" for his claims. (Docket #10).  Therefore, the Court turns to Helm's claims that the Defendants violated his due process rights in violation of § 1983.

In addressing Helm's § 1983 claim, the Court will first discuss (I) whether Helm has a protected liberty or property interest which supports a § 1983 claim.  After finding that Helm has a protected property interest, the Court will order (II) the parties to brief the issue of whether Helm's § 1983 claim was timely filed within the applicable statute of limitations.

## I.      Existence of a Protected Liberty or Property Interest.

"The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty or property without due process of law."  *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002).  "To sustain a procedural due process claim, a plaintiff must first demonstrate the existence of a protected liberty or property interest."  *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996).  If a protected interest exists, then the Court considers "whether the deprivation of that interest contravened notions of due process."  *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002).

Either a liberty interest or property interest can support a § 1983 claim.  In the employment context, a "liberty" interest generally refers to an employee's interest in being free from false, stigmatizing statements.  *Gunasekera v. Irwin*, 551 F.3d 461 (6th Cir. 2009).  Such statements impair an employee's freedom to seek alternative employment.  *Id*.  A "property" interest generally refers to the employee's interest in continuing in their current job or having the terms of an employment contract upheld.  *Id*.

4

The plaintiff bears the burden of establishing that he possesses these interests. *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

The Court first address (A) Helm's liberty interest, then (B) Helm's property interest.

### A.  Liberty Interest.

A "person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989); *Burkhart v. Randles*, 764 F.2d 1196, 1201 (6th Cir. 1985) (collecting cases).  However, not every "stigmatizing statement" gives rise to a protected interest.  *Ludwig v. Bd. Of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997).  "A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied."  *Id*.  First, the statement must be made in conjunction with the plaintiff's termination.  Second, the statements must allege more than "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance."  *Id*.  Third, the statements must be made public.  Fourth, the plaintiff must claim the statements are false.  Finally, the public dissemination must have been voluntary.  *Id*.

The second element – did the statement allege more than improper performance, incompetence, or malfeasance? – is determinative in this case.  "The type of liberty interest that *Roth* is intended to protect is a significant one, one akin to the right to future employment."  *Kohus v. Ohio State Highway Patrol*, 2011 U.S. Dist. LEXIS 32721 (S.D. Ohio, 2011).  "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation."

5

*Ludwig*, 123 F.3d at 410.  "[T]o infringe an employee's liberty interests, the circumstances of the termination must make it virtually impossible for the employee to find new employment in that field."  *Kohus*, 2011 U.S. Dist. LEXIS 32721 at *31 (*quoting Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995)).

In this case, Helm was alleged to have taken ideas for his research from other researchers.  In an academic environment, where original thought is highly valued, this is a serious accusation.  It did not, however, "make it virtually impossible" for Helm to secure future employment.  *Id*.  In 2011, Helm was hired by St. Louis University in their Division of Gynecologic Oncology.  (Docket #10).  Helm admits that in the interview process he "explain[ed] his termination from the University of Louisville and why his academic appointment was not renewed."  (Docket #10).  Helm considers his hiring "miraculous," but it is also clear evidence that whatever damage his reputation suffered did not rise to the level of preventing him from securing future employment.[1] Accordingly, Helm did not suffer a loss of his liberty interest and therefore his due process claim cannot proceed on this ground.

Helm also argues he did not receive a proper name-clearing hearing.  However, a name-clearing hearing is only required if the plaintiff can show he was deprived of a liberty interest, which Helm is unable to do.  *Chilingirian v. Boris*, 882 F.2d 200, 206 (6th Cir. 1989).  Moreover, such a hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid."  *Id*.  While the

---

[1] After twenty months, Helm resigned from St. Louis University, apparently due in part to Helm's opposition to the division director hiring his son.  Helm "then returned to England and is making less than half of what he earned at the University of Louisville." (Docket #10).

6

University of Louisville did not promptly refer Helm's case to the Research Integrity

Ombudsperson, the University of Louisville did ultimately review these claims and Helm

acknowledges he was "exonerated."  (Docket #10).

### B.  Property Interest.

Helm was hired on "tenure track" in 2000.  (Docket #10).  However, in 2005,

Helm "decided not to pursue tenure."  (Docket #10).  Helm took the position of Associate

Professor.  From 2006 onward, Helm was reappointed for one-year terms, each year

undergoing a review and receiving a one-year extension.  (Docket #10).  In March, 2009,

Helm learned he was eligible for promotion to Professor, a tenured position.  (Docket

#10).  The promotion process "would take months to complete" and required the approval

of Helm's department, the Dean, and the Provost.  (Docket #10).  The Promotion,

Appointment and Tenure Committee "determined that Helm met the qualifications for

promotion."  (Docket #10).  In September, 2009 – before Helm received the other

approvals necessary to be promoted – allegations of academic misconduct were made

against Helm.  The Promotion, Appointment and Tenure Committee rescinded its

recommendation that Helm be promoted.  (Docket #10).  Helm was placed on

administrative leave, barred from seeing patients, and stripped of his research positions.

(Docket #10).

Helm would eventually be "exonerated" from the claims of academic misconduct

by the Research Integrity Panel.  (Docket #10).  However, this did not occur until August,

2011, approximately eighteen months after Helm was placed on leave and removed from

the promotion process.  (Docket #1-42).  Helm argues this delay was caused by Eells and

Halperin's failure to report this academic misconduct to the Research Integrity

Ombudsperson as required by the Research Misconduct Policy. (Docket #10). Instead, Eells and Halperin internally investigated the claims. Helm argues he has a property interest in his promotion and in having the Research Misconduct Policy followed, which arguably would have resulted in Helm's reputation being cleared in time for his promotion review to proceed. (Docket #10).

Helm is a nontenured professor. As a general rule, he has no property interest in his continued employment. *Perry*, 408 U.S. at 601. The Court therefore considers Helm's arguments that special circumstances provide Helm with a property interest on which he may base his due process claim. First, the Court will consider Helm's interest in receiving a promotion. Second, the Court will consider Helm's interest in having the Research Integrity Policy followed.

### 1. Property Interest in Promotion.

A "public employee does not have a property interest in continued employment when his position is held at the will and pleasure of his superiors and when he has not been promised that he will only be terminated for good cause." *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989)) (collecting cases). In general, only a tenured teacher has a "'property' interest in continued employment." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). However, the "absence of such an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' interest in re-employment." *Id*. A teacher "who has held his position for a number of years, might be able to show from the circumstances of this service – and from other relevant facts – that he has a legitimate claim of entitlement to job tenure." *Id*. However, this must rise above a "unilateral

expectation" or "abstract need" for the benefit. *Bd. of Regents v. Roth*, 408 U.S. 564,

577 (1972).

Helm argues he has a property interest in receiving his promotion. In support, he

cites to *Perry* and *Gunasekera*. In both cases a nontenured professor was allowed to

proceed on his claim that he had a property interest in continued employment. *Perry*, 408

U.S. at 601; *Gunasekera*, 551 F.3d at 468. However, Helm's claim to receiving his

promotion is distinguishable from the facts of *Perry* and *Gunasekera*. In *Perry*, the

plaintiff was not tenured, but the college he taught at expressly disclaimed having a

tenure system and "wish[ed] the faculty member to feel that he has permanent tenure as

long as his teaching services are satisfactory and as long as he displays a cooperative

attitude toward his co-workers and his superiors, and as long as he is happy in his work."

*Id*. at 600. The *Perry* court held the college arguably had the "equivalent of tenure" and

remanded the case for further proceedings. *Id*. at 602-03. Similarly, in *Gunasekera*, a

professor survived a motion to dismiss on his argument that he enjoyed "Graduate

Faculty status," and that it was the university's "custom and practice" to retain a

professor in "Graduate Faculty status so long as he met the stated conditions."

*Gunasekera*, 551 F.3d at 468.

Helm argues that the University of Louisville has a similar custom. The Policy

for Promotion, Appointment and Tenure states: "Once formally initiated, the process of

review for promotion . . . shall proceed . . . unless the candidate requests in writing that

the proceedings be halted." (Docket #10; 1-31). Helm argues that since he did not

request the promotion proceedings to be halted, they should have continued. The Court is

not persuaded that this establishes a custom of confirming promotions once they had been

initiated, but instead merely gives professors the option to terminate their own promotion proceedings.  Conversely, the Policy for Promotion, Appointment and Tenure makes clear that the University of Louisville maintains discretion to grant or deny tenure.  The promotion process requires the department to make a recommendation, which is forwarded to the Dean, who also makes a recommendation, which is forwarded to the Provost for final determination.  (Docket #1-31).

A "benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Richardson v. Twp. of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) ("[Plaintiff] can have no legitimate claim of entitlement to a discretionary decision.").  Accordingly, even though promotion proceedings had been initiated, Helm did not have a property interest in continued employment because he was still nontenured and the University of Louisville retained discretion to grant or deny Helm's promotion to a tenured position.

### 2.  Property Interest in the Terms of the Research Integrity Policy.

Helm's second argument is that he had a property interest in having the Research Integrity Policy followed.  As discussed above, "an employer's custom and practice can form the basis for a protected property interest."  *Gunasekera*, 551 F.3d at 467.  A property interest can also arise from "state statute, a formal contract, or a contract implied from the circumstances."  *Ludwig*, 123 F.3d at 409; *Perry*, 408 U.S. at 601-02; *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir. 1991) ("The independent source may be a statute, policy, practice, regulation or guideline").  Therefore, a teacher has a property interest in a school complying with its own policies.  *Ludwig*, 123 F.3d at 409.  To create a property interest, the policy must do more than provide direction; compliance must be

"mandatory."  *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989) ("the language of the Regents' policy statement is not of a mandatory character, but merely articulates broadly stated TSU goals");  *Washington v. Starke*, 855 F.2d 346, 349 (6th Cir. 1988);  *Brown v. City of Niota*, 214 F.3d 718, 721-22 (6th Cir. 2000).

The Research Misconduct Policy defines "research misconduct" to include "appropriation of another person's ideas."  (Docket #1-15).  It establishes a Research Integrity Ombudsperson.  The policy requires "[a]ny official who receives an allegation of research misconduct must report it immediately to the Research Integrity Ombudsperson." (Docket #1-15).  The Research Integrity Ombudsperson is then responsible for "immediately assess[ing] the allegation to determine whether it is sufficiently credible."  (Docket #1-15).  The policy also states the "assessment period should be brief, preferably concluded within a week."  (Docket #1-15).  The policy also provides guidelines for notifying the accused and providing confidentiality during the proceedings.

The fact that officials "must report [research misconduct] immediately" indicates a binding obligation to report to the Research Integrity Ombudsperson.  *See Freeze v. City of Decherd*, 753 F.3d 661, 666-67 (6th Cir. 2014).  Helm has presented sufficient evidence that Eells and Halperin did not comply with this policy.  Accordingly, Helm has demonstrated that he had a property interest on which to base his § 1983 claim.

## II.    Statute of Limitations.

Although Helm has demonstrated he has a protected property interest to support his § 1983 claim, the Court is aware that the applicable statute of limitations for Helm's § 1983 claim may have expired.  Accordingly, the parties are ordered to brief the issue of

whether Helm's claim is barred by the statute of limitations for § 1983 claims.  *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990);  *Mickey v. McFaul*, 2010 U.S. Dist. LEXIS 82946 *3 (N.D. Ohio, 2010) (collecting cases) ("There would be no purpose in allowing this matter to go forward in view of the fact that it is clearly time-barred").

CONCLUSION

IT IS HEREBY ORDERED that, for the foregoing reasons, Defendants' motion to dismiss (Docket #5) is GRANTED in part and DENIED in part.  Defendant shall file a brief addressing how the statute of limitations applies to Helm's § 1983 claim within twenty days of this order.  Plaintiff shall file a response brief within twenty days after Defendant's brief.  Defendant may reply within fourteen days of Plaintiff's brief.