UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00654-TBR

C. WILLIAM HELM                                                                                    Plaintiff

v.

TRACY EELLS                                                                                         Defendants
EDWARD HALPERIN

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' motion to dismiss. (Docket #22). Plaintiff has responded (Docket #23). Defendants have replied. (Docket #24). This matter is now ripe for adjudication. For the following reasons, Defendants' motion to dismiss (Docket #22) will be GRANTED.

BACKGROUND

This action arises out of Plaintiff Dr. C. William Helm's termination from the University of Louisville School of Medicine. Helm was a clinician, teacher, and researcher in the Division of Gynecologic Oncology from 2000 to 2010. At all relevant times, Defendant Dr. Edward Halperin was the Dean and Defendant Dr. Tracy Eells was the Associate Dean for Faculty Affairs.

Helm's termination followed allegations that Helm took ideas for his research on ovarian cancer from research performed by two other doctors, Dr. Douglas Taylor and Dr. Cicek Gercel-Taylor. These allegations were made by Dr. Lynn Parker, the Director of the Division of Gynecologic Oncology, in a memorandum to Eells. The allegations came

as Helm was in the process of being reviewed for promotion from Associate Professor, an untenured position, to Professor, a tenured position.

The University of Louisville School of Medicine has enacted a Research Misconduct Policy. It requires research misconduct, which includes "taking another person's ideas without giving appropriate credit," to be reported to the Research Integrity Ombudsperson. (Docket #10). Helm argues Eells and Halperin did not report the alleged plagiarism to the Ombudsperson or keep the allegations confidential, as required by the Research Misconduct Policy. (Docket #1-15). Instead, Eells and Halperin discussed the plagiarism allegations with administration officials, other doctors, and legal counsel for the University of Louisville.

Helm claims he has been deprived of his liberty and property interest without due process in violation of 42 U.S.C. § 1983. Defendants moved to dismiss these claims. (Docket #5). This Court ruled that Helm had not been deprived of a liberty interest but that Helm does have a property interest in having the Research Misconduct Policy followed. (Docket #21). Defendants now move to dismiss Helm's property interest claim on the grounds that Helm filed it outside the one-year statute of limitations.

## STANDARD

Although Defendants filed a motion to dismiss, both parties have presented substantial evidence and matters outside the pleadings. Accordingly, the Court will treat Defendants' motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Song v. Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).

2

Summary judgment is proper if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id*. (*citing Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

The Court will first discuss (I) whether Helm knew or should have known of his claim more than one year before he filed this lawsuit. The Court will then discuss (II) Helm's argument for equitable tolling.

    **I.    Statute of Limitation.**

Although a § 1983 claim is a federal claim, the statute of limitations for a § 1983 claim is governed by state law. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180 (6th Cir. 1990) ("Since Congress has never legislated a statute of limitations period for section 1983 actions, the courts, pursuant to the mandate of 42 U.S.C. § 1988, have had to look to analogous state statutes"). Accordingly, "Kentucky's one-year statute of limitations governs section 1983 actions." *Id*. at 183; *see also Baar v. Jefferson County Bd. of Educ.*, 311 Fed. Appx. 817, 825 (6th Cir. 2009) (unpublished) (holding a teacher's due process claims were barred by Kentucky's one-year statute of limitations).

While state law controls the length of the statute of limitations, "federal law governs the question of when that limitations period begins to run." *McCune v. Grand Rapids,* 842 F.2d 903, 905 (6th Cir. 1988). "The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id*.

In this case, Helm's injury is being deprived of a property interest when the plagiarism claims against him were not reported in accordance with the Research Misconduct Policy. The Research Misconduct Policy requires allegations of research misconduct to be reported "immediately" to the Research Integrity Ombudsperson, who is then responsible for "immediately assess[ing] the allegation to determine whether it is sufficiently credible." (Docket #1-15). Eells and Halperin allegedly violated the

4

Research Misconduct Policy in conducting their own investigation, thereby depriving Helm of a prompt clearing of his name.

Helm filed this lawsuit on September 30, 2014. Defendants argue there were three incidents prior to September, 2013, which either did or should have put Helm on notice of his claim. These incidents are: (1) an October, 2009 meeting between Helm and Eells; (2) a May, 2010 grievance hearing; and (3) the May, 2013 deposition of Eells by Helm's attorney in a related case.

### 1. The October, 2009 meeting between Helm and Eells.

Helm met with Eells on October 7, 2009, to discuss Helm's "persistent disruptive behavior." (Docket #24). At that meeting, Helm was removed as the principle investigator on a research project and placed on administrative leave. Defendants argue that Helm should have known that Eells had not reported the alleged research misconduct to the Research Integrity Ombudsperson at this time. (Docket #24). In response, Helm argues that in October, 2009, he was unaware that any plagiarism claims had been made against him and believed he was being disciplined for his alleged "persistent disruptive behavior." Helm claims he did not learn of the plagiarism claims against him until December 10, 2010. (Docket #23). Therefore, it would be impossible for him to know that the Research Misconduct Policy was not followed. (Docket #23).

From the record, it appears Helm was unaware of the plagiarism claims against him during the October, 2009 meeting. Therefore, even with reasonable diligence, Helm could not have known whether these plagiarism claims were properly reported to the Research Integrity Ombudsperson.

### 2. The May, 2010 grievance hearing.

Following the October, 2009 meeting between Helm and Eells, Helm filed a grievance with the University of Louisville regarding his suspension. Defendants argue that Helm was provided with several internal e-mails and memoranda that should have put Helm on notice of the plagiarism charges made against him. Significantly, in a memorandum from Dr. Lynn Parker to Eells, Parker explains her concerns that Helm may have committed plagiarism. These allegations are laid out over one-and-a-half pages under the title "Research Integrity." (Docket #1-16). While this document would have alerted Helm to the plagiarism claims against him, it is arguable whether it would have also put Helm on notice that Eells and Halperin failed to properly report these claims to the Research Integrity Ombudsperson, thereby injuring Helm. The Court cannot say that at this time Helm should have reasonably known about his injury, but this is one fact which should have begun arousing Helm's suspicion.[1]

However, Helm knew of the plagiarism claims against him and should have known that these claims were not properly reported in December, 2010. Helm admits that he received a letter from the Research Integrity Ombudsperson on December 6, 2010. The letter from the Research Integrity Ombudsperson stated that Helm was accused of plagiarism over a grant titled "Plasma microRNA biomarkers of ovarian cancer." (Docket #1-39). Helm knew that Parker had made the same allegation against Helm, as Parker alleged Helm misappropriated research for a grant that "involves

---

[1] The Court finds it important that the Grievance Panel Recommendations (Docket #12-25) discuss only Helm's suspension for "disruptive behavior" with no discussion of the alleged plagiarism claims against Helm. Therefore, while Parker's memorandum might have raised Helm's suspicion, given that the focus was on Helm's "disruptive behavior," the Court finds it unlikely he would have reasonably known of his claim in May, 2010.

6

microRNA and ovarian cancer." (Docket #1-16). The fact that fifteen months elapsed between Parker's September, 2009 memorandum and the Research Integrity Ombudsperson's December, 2010 letter would have put a reasonable person on notice that the Eells and Halperin did not promptly report the plagiarism charges against Helm as required by the Research Misconduct Policy. Accordingly, Helm knew or should have reasonably known in December, 2010 of this claim.

### 3. The May, 2013 deposition of Eells.

Regardless of whether Helm knew of his claim in December, 2010, Helm did know or should have known of his claim in May, 2013. Helm's counsel deposed Eells on May 28, 2013 in Helm's lawsuit against Parker and Dr. Christine Cook. In that lawsuit, Helm claimed that Parker and Cook had defamed him by making false claims that Helm plagiarized research. (Docket #13-10). At least three times during the deposition Helm's counsel questioned Eells[2] about whether she referred the plagiarism claims to the Research Integrity Ombudsperson. Each time, Eells stated she did not refer the complaints to the Research Integrity Ombudsperson and instead told Cook and Parker to report their concerns to a vice dean or the associate dean for research. (Docket #24-1). Helm's attempt to characterize Eells' responses as equivocal is not persuasive. When asked if Eells instructed Cook and Parker to report their concerns to the Research Integrity Ombudsperson, Eells replied:

> "I don't recall I gave them that specific advice."

---

[2] It appears that Eells was reporting to and acting on behalf of Halperin. (Docket #24-1). The same information that would put Helm on notice that Eells had not properly reported the plagiarism allegations would cause Helm to reasonably suspect that Halperin had also not reported the plagiarism allegations.

7

> Question: "Do you re -- is it possible that you gave them that advice?"
>
> Eells: "I think what I probably did was ask that they -- or suggest that they speak to the vice dean or the associate dean for research." (Docket #24-1, p. 2).

Eells subsequent responses on this question were similar: "As best I recall, I advised -- they talked to the research deans." (Docket #24-1, p. 3). In May, 2013, Helm should have reasonably known from Eells's testimony that the plagiarism claims made against Helm were not reported to the Research Integrity Ombudsperson as required by the Research Misconduct Policy.

### II.    Equitable Tolling.

Helm argues that the statute of limitations should be tolled because the Defendants concealed information regarding Helm's claim. Specifically, Helm argues the following was concealed from him: the notes from Halperin's executive session meeting in September, 2009; Eells' e-mail of events sent to Halperin prior to that meeting; and Promotion and Tenure documents. (Docket #23).

"When a cause of action . . . accrues against a resident of this state, and he by absconding or concealing himself or by any other indirect means obstructs the prosecution of the action, [that time] shall not be computed as any part of the period within which the action shall be commenced." KRS § 413.190(2). Nevertheless, the statute begins to run when the fraud or concealment is discovered or when the facts demonstrating the existence of a claim are discovered or should have been discovered with reasonable diligence. *Adams v. Ison*, 249 S.W.2d 791, 793 (Ky. App. 1952); *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009) ("the limitations period began

8

only when GMRI's concealment was revealed or when Emberton should have discovered his cause of action by reasonable diligence").

In this case, regardless of whether Defendants concealed evidence, Helm was aware of his cause of action when he deposed Eells in May, 2013. This occurred more than one year before Helm filed this action, and accordingly Helm's claim is barred by Kentucky's one-year statute of limitations.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Docket #22) will be GRANTED.

A separate judgment and order will issue.